No. 21-17083

———————————

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————————

United States of America,

*Plaintiff-Appellant*,

*v.*

Jeffrey S. Page,

*Defendant-Appellee.*

———————————

On Appeal from the United States District Court
for the District of Arizona
Case No. CV-20-08072-PCT-JAT | Hon. James A. Teilborg

———————————

## ANSWERING BRIEF OF DEFENDANT-APPELLEE

———————————

Jacob T. Spencer
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC  20036-5306
202.887.3792

J. Jacob Marsh
Ben Gibson
Nicholas Venable
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Suite 4200
Denver, Colorado  80202-2642
303.298.5700
JMarsh@gibsondunn.com

*Attorneys for Appellee Jeffrey Page*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

STATEMENT OF JURISDICTION..................................................2

STATEMENT OF THE ISSUE ........................................................2

STATUTORY AND REGULATORY AUTHORITIES ...........................2

STATEMENT OF THE CASE..........................................................2

    A.    Factual History .................................................................2

    B.    Procedural History...........................................................3

STANDARD OF REVIEW ...............................................................5

SUMMARY OF THE ARGUMENT ..................................................5

ARGUMENT ................................................................................7

I.    Binding Precedent Dictated the District Court's Dismissal of This
Suit.....................................................................................9

    A.    *Carter* is binding precedent under Ninth Circuit law. ............9

    B.    Since 1938, the Ninth Circuit has deemed refunds "made" and
"paid" on the date the taxpayer receives the check...............19

    C.    The Supreme Court settled the statute's meaning in *O'Gilvie*. ..........23

    D.    The erroneous decisions of the Seventh and First Circuits do
not control here...............................................................30

II.    The Text, History, and Purpose of the Internal Revenue Code All
Indicate a Refund Is Made When the Check Is Received .................32

    A.    The statute's plain meaning requires the date-of-receipt rule.............33

    B.    Other uses of these terms in the Code clearly refer to the date
the taxpayer receives the check..........................................39

    C.    The statute incorporates the common-law date-of-receipt rule. .........42

## TABLE OF CONTENTS (*continued*)

**Page**

D.    The legislative history supports this interpretation. ...........................46

E.    The Government's policy arguments to the contrary fail. .................48

F.    The Government is judicially estopped from disputing that a refund in made when the check is delivered. ......................................50

CONCLUSION .......................................................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akers v. United States*,
541 F. Supp. 65 (M.D. Tenn. 1981)................................................................15

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Bonta*,
33 F.4th 1107 (9th Cir. 2022) ......................................................................12

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
501 U.S. 104 (1991)......................................................................................42

*B&G Foods N. Am., Inc. v. Embry*,
29 F.4th 527 (9th Cir. 2022) ........................................................................12

*Barapind v. Enomoto*,
400 F.3d 744 (9th Cir. 2005) .........................................................1, 6, 11, 13

*Barnes v. E. & W. Lumber Co.*,
205 Or. 553 (1955)........................................................................................45

*Bell v. Grimstad*,
82 Mont. 185 (1928) .....................................................................................45

*Best Life Assur. Co. of Cal. v. Comm'r of Internal Revenue*,
281 F.3d 828 (9th Cir. 2002) ..........................................................11, 12, 17

*Bugenig v. Hoopa Valley Tribe*,
266 F.3d 1201 (9th Cir. 2001) .....................................................................34

*Burnham v. Superior Ct. of Cal., Cnty. of Marin*,
495 U.S. 604 (1990)......................................................................................27

*California Stearns Co. v. Treadwell*,
82 Cal. App. 553 (Cal. Ct. App. 1927) ........................................................44

*Cermetek, Inc. v. Butler Avpak, Inc.*,
573 F.2d 1370 (9th Cir. 1978) .....................................................................43

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) .....................................................................13

# TABLE OF AUTHORITIES (*continued*)

**Page(s)**

*Chocallo v. I.R.S. Dep't of the Treasury*,
   No. CIV.A. 04-3737, 2007 WL 2071880 (E.D. Pa. July 16, 2007) ............32, 49

*Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*,
   626 F.3d 483 (9th Cir. 2010) ...............................................................13

*Coeur D'Alene Tribe of Idaho v. Hammond*,
   384 F.3d 674 (9th Cir. 2004) ...............................................................29

*Cornell v. Stimson Lumber Co.*,
   257 Or. 215 (1970)..............................................................................45

*Deutsche Bank AG v. United States*,
   742 F.3d 1378 (Fed. Cir. 2014) ...........................................................41

*Eisner v. Macomber*,
   252 U.S. 189 (1920)...........................................................17, 27, 28

*FDIC v. McSweeney*,
   976 F.2d 532 (9th Cir. 1992) ...............................................................10

*Gonzalez v. Arizona*,
   677 F.3d 383 (9th Cir. 2012) ...............................................................29

*Gudenau v. Bierria*,
   868 P.2d 907 (Alaska 1994) .........................................................36, 44

*Hale v. Bohannon*,
   38 Cal. 2d 458 (1952) .........................................................................43

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir.2001) ...............................................................51

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) .............................................................29

*Hernandez v. City of Los Angeles*,
   624 F.2d 935 (9th Cir. 1980) .................................................................5

iv

# TABLE OF AUTHORITIES (*continued*)

**Page(s)**

*Hooker v. Burr*,
   137 Cal. 663 (1902) ...................................................................44

*Ingram ex rel. D.D. v. L.A. Unified Sch. Dist.*,
   18 F.4th 1043 (9th Cir. 2021) ....................................................11

*Jonah R. v. Carmona*,
   446 F.3d 1000 (9th Cir. 2006) ...................................................46

*Lagandaon v. Ashcroft*,
   383 F.3d 983 (9th Cir. 2004) ................................................42, 45

*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080 (9th Cir. 2003) ...................................................28

*Lilly Ct. LLC v. Lee*,
   198 Or. App. 321 (2005)............................................................35

*Lyon v. Chase Bank USA, N.A.*,
   656 F.3d 877 (9th Cir. 2011) ......................................................5

*Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*,
   497 U.S. 116 (1990)...................................................................10

*McCormack v. Caldwell*,
   152 Idaho 15 (Ct. App. 2011).....................................................44

*Miller v. Gammie*,
   335 F.3d 889 (9th Cir. 2003) ................................................29, 30

*Miranda v. Anchondo*,
   684 F.3d 844 (9th Cir. 2012) .............................................36, 39, 41

*Navrides v. Zurich Ins. Co.*,
   5 Cal. 3d 698 (1971) .................................................................43

*New Bedford v. Lloyd Inv. Assocs., Inc.*,
   363 Mass. 112 (1973) ............................................................ 42-43

# TABLE OF AUTHORITIES (*continued*)

**Page(s)**

*New Hampshire v. Maine,*
532 U.S. 742 (2001) ......................................................................... 51

*Niz-Chavez v. Garland,*
141 S. Ct. 1474 (2021) ....................................................................... 8

*O'Gilvie v. United States,*
519 U.S. 79 (1996) .......................... 6, 8, 9, 20, 23, 24, 25, 27, 28, 31, 42, 45, 52

*Paresky v. United States,*
139 Fed. Cl. 196 (2018) ..................................................................... 41

*Paulson v. United States,*
78 F.2d 97 (10th Cir. 1935) .............................................. 15, 38, 39, 40

*Pure Wafer Inc. v. Prescott, City of,*
845 F.3d 943 (9th Cir. 2017) ............................................................. 50

*R & S Invs. v. Howard,*
95 Nev. 279 (1979) ............................................................................ 44

*Reiter v. Sonotone Corp.,*
442 U.S. 330 (1979) ................................................................... 34-35

*Rivers v. Roadway Exp., Inc.,*
511 U.S. 298 (1994) .......................................................................... 11

*Robbins v. Carey,*
481 F.3d 1143 (9th Cir. 2007) ........................................................... 29

*Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council,*
851 F.2d 1208 (9th Cir.1988) ............................................................ 51

*Rojas v. Fed. Aviation Admin.,*
989 F.3d 666 (9th Cir. 2021) ............................................................. 39

*Rushlight Automatic Sprinkler Co. v. United States,*
294 F.2d 572 (9th Cir. 1961) ...................................................... 24, 42

# TABLE OF AUTHORITIES (*continued*)

**Page(s)**

*Scott v. Gino Morena Enters., LLC*,
888 F.3d 1101 (9th Cir. 2018) .....................................................12, 13

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996)...........................................................................27

*Sinotes-Cruz v. Gonzales*,
468 F.3d 1190 (9th Cir. 2006) ...........................................................12

*Sizemore v. E.T. Barwick Industries, Inc.*,
225 Tenn. 226 (1971)..........................................................25, 26, 43

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
368 F.3d 1053 (9th Cir. 2004) ...........................................................28

*United States v. Anderson*,
364 F. Supp. 2d 569 (D.S.C. 2004) ............................................22, 52

*United States v. Bruce*,
642 F. Supp. 120 (S.D. Tex. 1986)..............................................23, 50

*United States v. Carpenter*,
84 F.2d 813 (10th. Cir. 1936) ......................................................37, 38

*United States v. Carter*,
906 F.2d 1375 (9th Cir. 1990) .................. 1, 4, 6, 7, 9, 10, 15, 16, 18, 19, 24, 52

*United States v. Commonwealth Energy Sys. & Subsidiary Cos.*,
235 F.3d 11 (1st Cir. 2000).....................................................30, 31, 32

*United States v. Fairbanks*,
95 F.2d 794 (9th Cir. 1938) ................................ 1, 6, 8, 9, 15, 19, 20, 21, 22, 38

*United States v. Flores*,
729 F.3d 910 (9th Cir. 2013) .............................................................36

*United States v. Greene-Thapedi*,
398 F.3d 635 (7th Cir. 2005) .......................................................30, 31

# TABLE OF AUTHORITIES (*continued*)

**Page(s)**

*United States v. Kim*,
806 F.3d 1161 (9th Cir. 2015) ...................................................51, 52

*United States v. LeCoe*,
936 F.2d 398 (9th Cir. 1991) .............................................................38

*United States v. Liquidators of Eur. Fed. Credit Bank*,
630 F.3d 1139 (9th Cir. 2011) ...................................................51, 53

*United States v. McAdory*,
935 F.3d 838 (9th Cir. 2019) .............................................................12

*United States v. McKinney*,
107 F.2d 879 (6th Cir. 1939) .............................................................38

*United States v. Merrell*,
37 F.4th 571 (9th Cir. 2022) .............................................................38

*United States v. Novak*,
476 F.3d 1041 (9th Cir. 2007) ...............................................20, 22, 38

*United States v. Woodmansee*,
388 F. Supp. 36 (N.D. Cal. 1975).......................................................15

*United States v. Wurts*,
303 U.S. 414 (1938)...............................................................8, 21, 22, 32

*Wagener v. U.S. Nat. Bank of La Grande*,
63 Or. 299 (1912)...............................................................................44

*Wagner v. Wedell*,
3 Cal. App. 274 (Cal. Ct. App. 1906) ...............................................43

*Walker v. Armco Steel Corp.*,
446 U.S. 740, 751 (1980)...................................................................53

*Woods v. Interstate Realty Co.*,
337 U.S. 535 (1949).........................................................................17

# TABLE OF AUTHORITIES (*continued*)

**Page(s)**

*Zal v. Steppe*,
  968 F.2d 924 (9th Cir. 1992) ............................................................28

**STATUTES**

28 U.S.C. 1291 ......................................................................................2

28 U.S.C. 1340 ......................................................................................2

28 U.S.C. 1345 ......................................................................................2

I.R.C. § 6532(b) ...................................................................4, 7, 9, 20, 33

I.R.C. § 6602 ......................................................................................20

I.R.C. § 6611(e)...................................................................................41

I.R.C. § 7402(a).....................................................................................2

I.R.C. § 7405 ...........................................................................2, 6, 7, 20

Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, Title II § 201,
129 Stat. 2242 (2015)........................................................................40

Revenue Act of 1928, 70 Pub. L. No. 562, Title IV, § 610,
455 Stat. 791 (1928)..........................................................................19

Revenue Act of 1936, 74 Pub. L. No. 740, Title VI, § 803,
49 Stat. 1648, 1744 (1936).............................................................19, 39

**OTHER AUTHORITIES**

6A David Frisch, *Lawrence's Anderson on the Uniform Commercial Code* § 3-
802:63 (3d. ed., 1981-2023)...............................................................36

70 H. Rep. 2 at 33 (1927) *reprinted* in J. S. Seidman, *Seidman's Legislative
History of Federal Income Tax Laws - 1938-1861* (1938).....................47

70 Senate Rep. 960 (1928)....................................................................48

70 C.J.S. Payment § 17 ........................................................................43

ix

# TABLE OF AUTHORITIES (*continued*)

**Page(s)**

I.R.S. C.C.A. 2005-03-031 (Jan. 21, 2005) ............................................................49

IRS, *EITC Awareness Day: Important changes mean more people qualify for credit that helps millions of Americans*, https://www.irs.gov/newsroom/eitc-awareness-day-important-changes-mean-more-people-qualify-for-credit-that-helps-millions-of-americans ......................................................................40

IRS, *The IRS must hold refunds for tax returns claiming EITC or ACTC until at least February 15*, https://www.irs.gov/pub/irs-utl/oc-path-201.pdf .....................40

IRS, *When to Expect Your Refund if You Claimed the Earned Income Tax Credit or Additional Child Tax Credit*, https://www.irs.gov/credits-deductions/individuals/earned-income-tax-credit/when-to-expect-your-refund-if-you-claimed-the-earned-income-tax-credit-or-additional-child-tax-credit ............40

*Make*, *Black's Law Dictionary* (11th ed. 2019) ......................................................33

*Make*, *Webster's New International Dictionary* (2d ed. 1934) ...............................33

*Refund*, *Black's Law Dictionary* (11th ed. 2019) ...................................................33

*Refund*, *Webster's New International Dictionary* (2d ed. 1934) ............................33

U.C.C. § 4-401 (Am. L. Inst. & Unif. L. Comm'n 1977).........................................35

**RULE**

Fed. R. App. P. 28 ...............................................................................................5, 13

**INTRODUCTION**

The resolution of this appeal is compelled by this Court's holding in *United States v. Carter*, 906 F.2d 1375 (9th Cir. 1990), which declared that a "refund is considered to have been made on the date the taxpayer received the refund check." *Id.* at 1377. Applying that holding, the district court correctly ruled that the Government's suit to recover an erroneous tax refund from Jeffrey Page was barred by the two-year statute of limitations that began to run when Mr. Page received the refund check, more than two years before the Government filed suit. *Carter*'s holding controls because, in this Circuit, a holding need not be "necessary" to the Court's decision, but need only be "presented for review," "addressed," and "decided" by a majority of the panel. *Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam).

This Court's holding in *United States v. Fairbanks* requires the same result. 95 F.2d 794 (9th Cir. 1938), *aff'd*, 306 U.S. 436 (1939). Interpreting the predecessor to the statute at issue here, *Fairbanks* held that a refund is considered made and paid the day the taxpayer receives a refund check.

Of course, even if an *en banc* panel of this Court were inclined to revisit *Carter* and *Fairbanks*, Supreme Court precedent, basic principles of statutory interpretation, background common-law rules, and common sense would demand

the same result. A refund is made and paid when the taxpayer receives a refund check, and the statute of limitations begins to run the same day.

## STATEMENT OF JURISDICTION

Mr. Page agrees with the Government that the district court had jurisdiction over this case under I.R.C. §§ 7402(a) and 7405, and under 28 U.S.C. §§ 1340 and 1345. Mr. Page further agrees that the district court's October 25, 2021, judgment in his favor was a final order, thereby granting this Court jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly applied *Carter*'s interpretation of I.R.C. § 6532(b) in dismissing this suit as untimely.

## STATUTORY AND REGULATORY AUTHORITIES

Pertinent constitutional, statutory, and regulatory authorities appear in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Factual History

The Internal Revenue Service ("IRS") mistakenly credited another taxpayer's payment to Mr. Page's account. (ER-45.) As a result of its mistake, the IRS mailed Mr. Page an erroneous refund check for $491,104.01 (rather than the $3,463 he should have received) on May 5, 2017. (ER-5, 46.) Mr. Page does not recall the

exact date he received the check, but he recalls telling a coworker about the check two or three months afterward. (ER-26-27.) In any event, Mr. Page received the check sometime before March 31, 2018. (ER-40; *see also* ER-9, 33.)

After he received the check, Mr. Page tried to get in contact with the IRS to ask why he had received the check. (ER-28.) But he could not get through to anyone. (*Id.*) As the expiration date on the check was approaching, he decided to deposit it. (*Id.*) Mr. Page deposited the check on April 5, 2018. (ER-5.) The record does not indicate when the check cleared the Federal Reserve.

According to the Government, the IRS contacted Mr. Page and requested return of the refund at some point after Mr. Page deposited the check. (ER-46.) On December 6, 2019—two years and seven months after the IRS mailed the check—Mr. Page voluntarily returned $210,000 of the refund. (*Id.*)

## B.    Procedural History

On March 31, 2020—almost three years after the IRS mailed the check—the Government filed suit under I.R.C. § 7405 to recover the erroneous refund. (ER-4, 5, 44, 48, 53 [Doc. 1].) When Mr. Page, who was proceeding *pro se*, did not file a responsive pleading, the clerk entered default, and the Government moved for default judgment. (ER-4, 53-54 [Docs. 13, 15].) The district court, however, ruled that the Government's complaint was barred by the two-year statute of limitations applicable to a Section 7405 suit to recover an erroneous tax refund. (ER-4, 40.)

The district court observed that I.R.C. § 6532(b) permits suit to recover an erroneous refund "only if such suit is begun within 2 years after the making of such refund." (ER-40 (citing I.R.C. § 6532(b)).)

The district court determined that the Government had failed to act within this limitations period. In reaching this conclusion, the district court applied long-standing Ninth Circuit precedent, *see* ER-40 (quoting *Carter*, 906 F.2d at 1372, 1377), which held that "[t]he refund is considered to have been made on the date the taxpayer received the refund check." Because the Government waited more than two years after Mr. Page received the refund check to file suit, the district court concluded that the Government's suit was time-barred. (ER-39-42.) The district court therefore ordered the Government to show cause why its case should not be dismissed with prejudice. (ER-43.)

The Government requested discovery to determine with more specificity when Mr. Page received the refund check. (ER-33.) Although the district court granted limited discovery in the form of interrogatories, such discovery did not identify the precise date of receipt. (ER-5.) Still, the district court explained that because the "government's complaint does not allege when Page received the refund check," and the IRS "mailed Page the erroneous refund on May 5, 2017 . . . it defies common sense to believe it took 330 days for Page to receive the check in the mail." (ER-40.) The district court found that Mr. Page received the check sometime before

- 4 -

March 31, 2018 and thus more than two years before the Government filed its suit. (*Id.*) Because the Government sued Mr. Page more than two years after Mr. Page received the check, the district court dismissed the complaint with prejudice as time-barred by Section 6532(b). (ER-9, 40.)

The Government timely appealed.

## STANDARD OF REVIEW

Questions of statutory interpretation and the application of Ninth Circuit precedent are pure questions of law that this Court reviews *de novo*. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). Because the Government did not raise any other issues in its opening brief, it has not preserved any questions of fact on appeal. *See Hernandez v. City of Los Angele*s, 624 F.2d 935, 937 n.2 (9th Cir. 1980) ("Because he did not raise the issue in his [opening] brief, [the appellant] has not perfected his appeal as to that part of the judgment.") (citing Fed. R. App. P. 28(a)).

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed the Government's suit against Mr. Page for two reasons.

*First*, the district court was correct to regard this Court's decision in *Carter* as binding precedent interpreting I.R.C. § 6532(b)'s statute of limitations. The Ninth Circuit in *Carter* resolved a similar dispute between a taxpayer and the Government

- 5 -

over the timeliness of the Government's suit. In doing so, the Court unmistakably adopted a date-of-receipt rule, holding that a "refund is considered to have been made on the date the taxpayer received the refund check." 906 F.2d at 1377. *Carter*'s holding is the law of the Circuit because it was "presented for review," "addressed," and "decided" by a majority of the panel. *Barapind*, 400 F.3d at 750-51. Thus, the statute-of-limitations clock began running at the time Mr. Page received the refund check, which was more than two years before the Government sued Mr. Page.

*Carter*'s interpretation of when the statute of limitations starts running under Section 6532(b) is supported by Ninth Circuit precedent interpreting its predecessor statute, *see United States v. Fairbanks*, 95 F.2d 794, 795-96 (9th Cir. 1938), *aff'd*, 306 U.S. 436 (1939) (holding that a refund is made and paid on the date "[t]he refund check was delivered to the taxpayer"), and by Supreme Court precedent, *see O'Gilvie v. United States*, 519 U.S. 79, 91 (1996) (applying the common-law "'date of receipt' rule" in concluding that a Section 7405 action accrues and the statute of limitations begins to run on the date the taxpayer "*received* the refund checks") (emphasis in original). Any out-of-circuit cases that purport to contradict this authority are not binding in this Circuit and, more to the point, are erroneous.

*Second*, even if this Court was to begin from first principles of statutory interpretation, it should reach the same conclusion that this Court reached in *Carter*.

The Government argues that the statute of limitations does not begin running until the taxpayer deposits the refund check. But the relevant language in Section 6532(b)—a suit is timely only if it is "begun within 2 years after the making of such refund"—starts the limitations period upon the IRS taking action by delivering the check to the taxpayer. This accords with both common-sense and law. Accordingly, federal courts in the 1930s interpreted the language of Section 6532(b)'s predecessor statute and concluded that the "making" of a refund occurs upon delivery of a check by the IRS. Congress later ratified those contemporaneous interpretations. Further, the date-of-receipt rule comports with similar language in the Internal Revenue Code, with common-law background rules for actions for money had and received, and with the legislative history of the statute that became Section 6532(b). And because the Government has argued for the date-of-receipt rule in case after case, the Government is judicially estopped from taking a contrary position to gain an unfair advantage in this case.

## ARGUMENT

More than two years after Mr. Page received an erroneous refund check, the Government brought this suit under I.R.C. § 7405(b) to recover the improper portion of the refund. (ER-4, 5, 44, 48, 53 [Doc. 1].) But "[r]ecovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund." I.R.C. § 6532(b). Under binding Ninth Circuit

precedent, "[t]he refund is considered to have been made on the date the taxpayer received the refund check." *Carter*, 906 F.2d at 1377. That is because, as this Court has held for 85 years, the date of the "making of the refund" and "the date of payment of the refund" is the same as the date "[t]he refund check was delivered to the taxpayer." *Fairbanks*, 95 F.2d at 795-96; *see also United States v. Wurts*, 303 U.S. 414, 418 (1938). So, in the Ninth Circuit, there is a single date that constitutes the date of receipt, of payment, and of "the making of such refund." *Fairbanks*, 95 F.2d at 795-96. Supreme Court precedent applies the same rule. *O'Gilvie*, 519 U.S. at 91.

The date-of-receipt rule has long been established by binding Ninth Circuit precedent and is supported by basic principles of statutory interpretation, background common-law rules, and common sense. This Court should not accept the Government's efforts to erase binding precedent and to contort the relevant statutory language in order to fix the Government's mistake. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

In this case, Mr. Page received the erroneous refund check more than two years before the Government filed suit. The Government's action is therefore time-barred, and the district court was correct to dismiss it.

**I.      Binding Precedent Dictated the District Court's Dismissal of This Suit.**

This Court is not writing on a blank slate in interpreting Section 6532(b).  The Ninth Circuit has already spoken on this issue and made clear that the statute of limitations for recovering an improper refund begins to run the day that the taxpayer receives the check.  *See Carter*, 906 F.2d at 1377; *Fairbanks*, 95 F.2d at 795.  The Supreme Court has held likewise.  *O'Gilvie*, 519 U.S. at 91.  The Government's attempts to explain away this binding precedent fail.

**A.      *Carter* is binding precedent under Ninth Circuit law.**

As the district court correctly ruled, *Carter* dictates the result in this case.  *Carter* holds that, for the purpose of Section 6532(b), "[t]he refund is considered to have been made on the date the taxpayer received the refund check."  906 F.2d at 1377.  Because Mr. Page received the refund check more than two years before the Government filed suit, the suit was not "begun within 2 years after the making of such refund."  I.R.C. § 6532(b).  Thus, the Government's suit was not timely.

The Government tries to overcome *Carter*'s interpretation of Section 6532(b) in two ways.  *First*, the Government attempts to get a "redo" on *Carter*'s interpretation by invoking the interpretive canon that ambiguous statutes of limitations should be construed in favor of the Government.  Opening Brief at 13-14 (quoting *O'Gilvie*, 519 U.S. at 92).  But this Court in *Carter* construed the relevant language already.  *See* 906 F.2d at 1377-78.  There, the Government argued

that the Ninth Circuit should interpret Section 6532(b)'s limitations period to begin on the date the taxpayer received the refund check. Brief for Appellee at 17-18, *United States v. Carter*, No. 89-35526 (9th Cir. Nov. 17, 1989) (hereinafter "*Carter* Appellee Brief*") ("[T]he statute begins to run 'only when the taxpayer had an enforceable right to the refund,' i.e., 'when the taxpayer received the refund check . . . .'"). The taxpayer, however, contended that the statute of limitations should be the date on which the IRS mailed the refund check. *Carter*, 906 F.2d at 1377. The Court agreed with the Government and adopted the interpretation more favorable to the Government in that case, holding that the date-of-receipt rule applies to Section 6532(b). *Id.* at 1378.

Because the Ninth Circuit has already interpreted this statute of limitations, the statute's meaning is no longer ambiguous. *See Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 131 (1990) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of stare decisis."); *see FDIC v. McSweeney*, 976 F.2d 532, 535 (9th Cir. 1992) ("As a three-judge panel, we are bound by prior decisions interpreting . . . federal law in the absence of intervening controlling authority."). And because the statute is no longer ambiguous, the Government's suggested canon of construction does not apply. The Government cannot move the goal posts in each new case based on what it believes will benefit it most in the current matter. To hold otherwise would be inconsistent

with the principle that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-13 (1994); *see also Ingram ex rel. D.D. v. L.A. Unified Sch. Dist.*, 18 F.4th 1043, 1057 (9th Cir. 2021) (en banc) ("[W]hen we have already construed a statute that Congress has the authority to amend, *stare decisis* should govern.").

*Second*, the Government seeks to evade *Carter*'s clear interpretation by mistakenly asserting that *Carter*'s holding is a dictum and thus not binding. Citing a now-overruled holding from 2002, the Government argues that "an opinion is nonbinding dictum when 'it is unnecessary to the decision in the case.'" Opening Brief at 19 (citing *Best Life Assur. Co. of Cal. v. Comm'r of Internal Revenue*, 281 F.3d 828, 834 (9th Cir. 2002)). This is wrong. Even if the Government were correct that *Carter*'s date-of-receipt holding was not necessary to its decision, the Government "operate[s] under a mistaken understanding of what constitutes circuit law" by insisting that a holding must be technically "necessary" to the Court's decision. *Barapind*, 400 F.3d at 744, 750. Sitting *en banc* in *Barapind*, the Ninth Circuit overruled prior cases—including the case the Government cites for its dated definition of holding and dicta—that would have required a holding to be "necessary" to be the law of the Ninth Circuit. *Id.* Following *Barapind*, when an issue is "presented for review," then "addressed" and "decided . . . in an opinion

- 11 -

joined in relevant part by a majority of the panel," the panel's opinion on the issue is the "law of the circuit, regardless of whether it was in some technical sense 'necessary' to [the] disposition of the case." *Id.* at 750-51. For the past 15 years, the *Barapind* rule for precedent has been the settled law of the Ninth Circuit.[1]

The Government's argument that *Carter*'s interpretation of Section 6532(b) is dictum turns on the Government's misconception that if a statement was "unnecessary to the decision in the case," it must not have been "germane to the . . . resolution of the case." Opening Brief at 19-20 (conflating *Best Life*, 281 F.3d at 834 with *Scott v. Gino Morena Enters.*, *LLC* ("*Gino Morena*"), 888 F.3d 1101, 1109 (9th Cir. 2018)). But because this Court's analysis of the date-of-receipt rule in *Carter* was "indisputably part of the reasoning employed by the court" in reaching its decision, and this Court's adoption of the date-of-receipt rule "bore directly on" its disposition in that case, *Carter*'s interpretation of the statute was certainly "germane to the eventual resolution of the case" under this Circuit's law of precedent. *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 537 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 212 (Oct. 3, 2022).

The Government's cherry-picked cite from *Gino Morena*, a case which post-dates *Barapind* and exists within the framework of precedent that *Barapind*

---

[1] *See, e.g.*, *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Bonta*, 33 F.4th 1107, 1117 n.2 (9th Cir. 2022); *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019); *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1203 (9th Cir. 2006).

established, does not support the Government's argument to the contrary. Had the Government included the full quote from *Gino Morena*, it would be clear that *Carter*'s interpretation of Section 6532(b) was a holding, not a dictum:

> The line [between binding precedent and dictum] is not always easy to draw, however, for where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, *regardless of whether doing so is necessary in some strict logical sense*.

*Gino Morena,* 888 F.3d at 1109 (emphasis added) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004)). An issue may be germane to the resolution of a case regardless of whether the issue's resolution is necessary. And of course, the language omitted by the Government constitutes the core holding of *Barapind*. 400 F.3d at 750-51.

Under *Barapind*, *Carter*'s adoption of the date-of-receipt rule was precedential. The date-of-receipt rule was presented for review in *Carter*, as the Government agreed at the time. An issue is "presented for review" when it is "clearly articulated in (1) 'a statement of the issues presented for review'; (2) 'a summary of the argument'; and (3) 'the argument' section itself." *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu,* 626 F.3d 483, 485 (9th Cir. 2010) (quoting Fed. R. App. P. 28). In the *Carter* taxpayer-appellant's "Statement of Issues," the taxpayer disputed the Government's contention "that the statute of limitations runs from the date that the taxpayer received the check in the mail" and appealed the

district court's ruling "that the date of receipt of the check . . . was the date of payment for the purposes of the running of the statute of limitations."  Brief of Appellant at 8, *United States v. Carter*, No. 89-35526 (9th Cir. Oct. 5, 1989).  In the taxpayer's "Summary of Argument," the taxpayer argued that this Court should reject the Government's argument "that the date of making a refund is the date taxpayers receive the check," and that this Court should reverse the district court's ruling that the date-of-receipt rule applied.  *Id.* at 12.  And the taxpayer in *Carter* spent the majority of his "Argument" section arguing at length against the date-of-receipt rule.  *Id.* at 17-21.

The Government argued the same issue on the merits in *Carter*.  In its brief in *Carter*, the Government argued at length that "the operative date for purposes of Section 6532(b) is the date that the erroneous refund was received by taxpayer . . . ." *Carter* Appellee Brief at 10; *see also, e.g.*, *id.* at 17 (similar); *id.* at 18 ("The relevant date for purposes of Section 6532(b), however, is not the date the refund was issued, but the date it was received."); *cf. id.* at 6 (reiterating the Government's argument below that "the date of the 'making of such refund' for purposes of the two-year statute of limitations was the date taxpayer received the refund").  Specifically, the Government argued in *Carter* that "the statute begins to run 'only when the taxpayer had an enforceable right to the refund,' i.e., 'when the taxpayer received the refund

- 14 -

check . . . .'" *Id.* at 17-18 (quoting *Akers v. United States*, 541 F. Supp. 65, 67 (M.D. Tenn. 1981)).

In other words, the parties squarely presented this issue in *Carter*. In response, the Ninth Circuit squarely addressed and decided the correctness of the date-of-receipt rule. That issue was not decided in passing. This Court in *Carter* agreed with the Government's arguments in favor of the date-of-receipt rule—indeed, *Carter* cites all five of the cases cited by the Government in that case to support the date-of-receipt rule. *Compare Carter*, 906 F.2d at 1377; *Fairbanks*, 95 F.2d at 795; *Akers*, 541 F. Supp. at 67; *United States v. Woodmansee*, 388 F. Supp. 36, 46 (N.D. Cal. 1975), *rev'd on other grounds*, 578 F.2d 1302 (9th Cir. 1978); *and Paulson v. United States*, 78 F.2d 97, 98-99 (10th Cir. 1935), *with Carter* Appellee Brief at 17-18 (citing the same five cases to support the proposition that "the operative date for purposes of Section 6532(b) is the date that the erroneous refund was received by the taxpayer"). And this Court explicitly adopted the Government's reasoning in rejecting inapposite precedents cited by the taxpayer. *See Carter*, 906 F.2d at 1377 n.4.

In short, the Ninth Circuit considered the parties' arguments regarding the date-of-receipt rule; addressed them; rejected the taxpayer's arguments against the date-of-receipt rule; and adopted the Government's arguments in favor of the date-

of-receipt rule, thereby deciding the issue. Thus, under this Court's *en banc* decision in *Barapind*, the date-of-receipt rule is the law of the Ninth Circuit.

And there can be no dispute that when this Court said that "the date the taxpayer received the refund check," it meant "the date the taxpayer received the refund check"—and not some later date. *Carter*, 906 F.2d at 1377. There, because the Government sued on December 8, 1987, its suit was time-barred "only if Carter received the refund check before December 8, 1985." *Id.* at 1377. The record disclosed that the "check was dated December 6, 1985, and negotiated on December 23, 1985." *Id.* at 1378. But there was "no evidence of when the check was actually mailed; nor did the Government proffer any evidence as to when Carter received the check." *Id.* at 1378. And because Carter "failed to allege any facts showing that he received the check before December 8, 1985," the district court did not err in granting summary judgment to the Government on Carter's affirmative defense. *Id.* If, as the Government now contends, *Carter* left open the possibility that the two-year statute of limitations began to run on the date the check clears the Federal Reserve, that whole section of the Court's opinion would have been unnecessary. After all, the date the check was negotiated was in the record and was less than two years before the Government filed suit.

What is more, the Government's argument fails on its own terms. The Government asks this Court to set aside *Carter*'s only stated ground for its decision,

and instead to read into *Carter* an implied, narrower holding that could have logically reached the same result (and in a shorter opinion). But as this Court noted in *Best Life*, "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." 281 F.3d at 834 (quoting *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949)). So even if necessity were the essence of precedent in this Circuit, and even if this Court had explicitly stated an alternative ground for its decision in *Carter*, the Government would still be wrong. In that alternate universe, either ground would have decided *Carter*, and thus "none c[ould] be relegated to the category of obiter dictum"—not even under the Government's outdated understanding of what constitutes precedent in the Ninth Circuit. *Best Life*, 281 F.3d at 834 (quoting *Woods*, 337 U.S. at 537). And of course, if an alternative holding cannot be dictum, it would be absurd to deem *Carter*'s *only* holding dictum. *See Eisner v. Macomber*, 252 U.S. 189, 205 (1920) (holding that where the Court's reasoning "furnished the entire basis for the conclusion reached" it "cannot be regarded as obiter dictum").

Besides, *Carter*'s date-of-receipt holding should come as no surprise to the Government. In briefing other cases involving Section 6532(b), the Government has acknowledged that *Carter*'s adoption of the date-of-receipt rule was that opinion's holding. The Government argued that the Supreme Court should follow *Carter*'s holding and adopt the same date-of-receipt rule in *O'Gilvie*. In its brief in *O'Gilvie*,

the Government cited *Carter* as "holding that '[t]he refund is considered to have been made on the date the taxpayer received the refund check.'" Brief for Petitioner, *O'Gilvie v. United States*, 519 U.S. 79 (1996) (Nos. 95-966, 95-977), 1996 WL 33413802, at *39 (hereinafter "*O'Gilvie* Petitioner Brief"). The Government has made the same argument time and again in similar cases. *See* Response to Defendants' Dispositive Motion for Summary Judgment, *United States v. Steinbrenner*, No. 8:11-cv-02840 (M.D. Fla. June 7, 2013), 2013 WL 12307914 ("The cases hold that the date on which a refund is made is the date the taxpayer receives the check."); United States' Complaint, *United States v. Davenport*, No. 3:09-cv-02455 (N.D. Tex. May 16, 2013), 2009 WL 6354944 ("The United States has two years from receipt of the refund by the taxpayer to file its complaint for erroneous refund." (citing *Carter*, 906 F.2d at 1377)); Brief for the Appellee, *United States v. Morgan*, No. 94-56628 (9th Cir. 1996), 1995 WL 17116305 ("This Court in *Carter*, 906 F.2d at 1377, held that '[t]he refund is considered to have been made on the date the taxpayer received the refund check.'"). The Government cannot justify its change of mind in this case.

The Government now invites this panel to ignore this Circuit's law of precedent; to imply unstated alternative holdings into *Carter*; to reject as unnecessary *Carter*'s only stated holding; and along the way, to overrule the decision of a prior panel. This panel should decline the Government's invitations.

*Carter* holds that "[t]he refund is considered to have been made on the date the taxpayer received the refund check" for the purpose of Section 6532(b)'s limitations period. 906 F.2d at 1377. The district court was therefore correct to deem this suit untimely under binding Ninth Circuit precedent.

**B. Since 1938, the Ninth Circuit has deemed refunds "made" and "paid" on the date the taxpayer receives the check.**

*Carter* does not stand alone in creating binding precedent that dictates the outcome here. The Ninth Circuit in *United States v. Fairbanks* held that a refund is made and paid on the date the taxpayer receives a refund check. 95 F.2d at 795, 796.

*Fairbanks* concerned Section 610 of the Revenue Act of 1928, a predecessor statute to Sections 6532 and 7405 that used the same language at issue here. Section 610(b) stated: "Any portion of an internal-revenue tax . . . which has been erroneously refunded . . . may be recovered by suit brought in the name of the United States, but only if such suit is begun before the expiration of two years after the making of such refund or before May 1, 1928, whichever date is later." Revenue Act of 1928, 70 Pub. L. No. 562, Title IV, § 610, 455 Stat. 791, 875 (1928). Section 610(d) provided: "Erroneous refunds recoverable by suit under this section shall bear interest at the rate of 6 per centum per annum from the date of the payment of the refund." Revenue Act of 1936, 74 Pub. L. No. 740, Title VI, § 803, 49 Stat. 1648, 1744 (1936).

The relevant language of Section 610 is nearly identical today: "only if such suit is begun within 2 years after the making of such refund." I.R.C. § 6532(b); *see also* I.R.C. § 6602 (amounts erroneously refunded and recoverable under Section 7405 "shall bear interest . . . from the date of the payment of the refund"). This Court "presume[s] that Congress is aware of pre-existing judicial interpretations of statutory language it replicates in later statutes, and that it seeks to import those interpretations into the new statute." *United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) (en banc). Accordingly, decisions interpreting the meaning of Section 610 are dispositive as to the meaning of Section 6532(b). The Government concedes this point. *See* Opening Brief at 12. The Supreme Court agrees. *See O'Gilvie*, 519 U.S. at 92.

This Court in *Fairbanks* considered two questions of statutory interpretation relevant here. First, the Court considered when "the making of such refund" occurs and the statute of limitations begins to run under Section 610(b). Second, the Court interpreted "the date of payment of the refund" for purposes of assessing interest under Section 610(d).

The Ninth Circuit was asked in *Fairbanks* first to decide whether the "making of such refund" occurs "upon allowance of the refund—that is to say, upon the signing of the schedule by the Commissioner," or later, upon or after "the delivery of the refund check." *Fairbanks*, 95 F.2d at 795. The Court held that the "making

of such refund" does not occur "upon allowance of the refund" by the IRS. *Id.* The Court further held that the "making of such refund" occurs and the limitations period begins to run "upon the actual *making* of the refund." *Id.* (emphasis added) (citing *Wurts*, 303 U.S. at 418).

In so holding, the Ninth Circuit cited the Supreme Court's decision in *Wurts*, issued mere weeks before. *Wurts*, addressing the same question, had held that the "making of such refund" occurs not "when the refund is allowed" but instead on "the date of payment." 303 U.S. at 415, 418. *Wurts* did not pass upon the question of what date constitutes "the date of payment" under Section 610. *Id.*

Next, the Ninth Circuit interpreted the phrase "the date of payment of the refund" under Section 610(d). This Court in *Fairbanks* conclusively interpreted "the date of payment of the refund" to be the same as the date of "the making of [the] refund"—the date "[t]he refund check was delivered to the taxpayer." 95 F.2d at 795-96. The judgment in *Fairbanks* was against the taxpayer, so the Court was forced to decide the precise date of payment, because even a day earlier or later would have changed the amount of the judgment. The Government in that case argued that "interest should have been allowed from the date of refund." *Id.* at 795. The Court thus held that "the date of the payment of the refund" is the same as the date "[t]he refund check was delivered to the taxpayer"—in that case, "January 26, 1932." *Id.* at 795, 796. Accordingly, the Court ruled that "interest should have been

allowed from January 26, 1932," the date the taxpayer received the check. *Id.* at 796.

The Section 610(b) limitations period began upon "the making of such refund." That means "the actual making of the refund," in other words, "the date of payment." *Fairbanks*, 95 F.2d at 795; *Wurts*, 303 U.S. at 418. And the Ninth Circuit interpreted "the date of payment of the refund" under Section 610(d) to be the date "[t]he refund check was delivered to the taxpayer." *Fairbanks*, 95 F.2d at 795-96. Under Section 610, a refund was thus made and paid on the date it was delivered to the taxpayer—that is, the date of receipt. Interest began to accrue on the date of receipt, and the two-year statute of limitations began to run the same day.[2]

The Ninth Circuit's interpretation of Section 610 in *Fairbanks* controls the meaning of Section 610's successor statutes. *Novak*, 476 F.3d at 1051. That interpretation is thus dispositive here. Mr. Page received the erroneous refund check on a date more than two years before the Government brought suit to recover it;

---

[2] The Government seems to have agreed with this interpretation before it brought this case, and the Government has in other cases sought and received interest from the date the check was delivered. *See, e.g.*, *United States v. Anderson*, 364 F. Supp. 2d 569, 571, 573 (D.S.C. 2004), *report and recommendation adopted*, (D.S.C. Dec. 16, 2004) (granting the Government's request for interest from February 9, notwithstanding the fact that "[t]he check was paid by the United States Treasury on February 23"); *see also United States v. Korda*, No. 8:04-cv-2792, 2005 WL 2337621, at *1 (M.D. Fla. Aug. 23, 2005); *United States v. Campbell*, No. 03-cv-6062, 2003 WL 23241957, at *1 (W.D.N.Y. Dec. 18, 2003).

under this Court's precedent, the refund was thus made and paid that same day, and the Government's suit more than two years later was not filed timely.

### C. The Supreme Court settled the statute's meaning in *O'Gilvie*.

If Ninth Circuit precedent were not enough, the Supreme Court conclusively interpreted Section 6532(b) to incorporate the common-law date-of-receipt rule. *O'Gilvie*, 519 U.S. at 90-92. *O'Gilvie*, like *Carter* and *Fairbanks*, began as a suit by the Government to recover an erroneous refund. *Id.* at 90. And the same issue arose: whether the "making of a refund" occurs on the date the taxpayer "*received* the refund check[]" for purposes of Section 6532(b). *Id.* at 91. The Government argued, as it had in *Carter*, that the Supreme Court should adopt the date-of-receipt rule for the statute of limitations in Section 6532(b). *Id.* (discussing the Government's argument that the date the taxpayer "*received* the refund check[]" is "the date of the 'making' of the refund"). To support its argument, the Government in *O'Gilvie* relied on the same cases the Government now disclaims. *O'Gilvie* Petitioner Brief at *39 (citing *Carter* as "holding that '[t]he refund is considered to have been made on the date the taxpayer received the refund check'"); *see also id.* at *38 (citing *Paulson* for the principle that a refund "is made when the check in payment of the obligation is delivered"); *id.* at *39 (arguing that "the analysis of *Wurts*" supports the date-of-receipt rule); *id.* at *38-40 (citing *Woodmansee*, *Akers*, and *United States v. Bruce*, 642 F. Supp. 120, 122 (S.D. Tex. 1986), for similar).

In weighing when the statute of limitations begins to run under Section 6532(b), the Supreme Court compared the Government's proposed rule to the alternatives. *See O'Gilvie*, 519 U.S. at 91-92. During oral argument, the Court contemplated at length whether a refund is "made" on "the date when the refund was authorized," or when "the Government simply draws a check," or "when the check is mailed," or "the time it's received by somebody," or on "the date of negotiating the check." Oral Argument Transcript at 45:17-52:4, *O'Gilvie v. United States*, 519 U.S. 79 (1996) (Nos. 95-966, 95-977), https://www.oyez.org/cases/1996/95-966. The Court ultimately rejected all other possible dates and adopted "a 'date of receipt' rule." *O'Gilvie*, 519 U.S. at 92.

Having weighed all the options, the Supreme Court ultimately agreed with this Circuit's prior observation in *Carter* that an action to recover an erroneous refund is tantamount to a common-law action for "money had and received." *See id.* at 91 (*citing Carter*, 906 F.2d 1375); *see also Rushlight Automatic Sprinkler Co. v. United States*, 294 F.2d 572, 574 (9th Cir. 1961) (collecting cases). And the Supreme Court held that Congress incorporated that background, common-law rule in Section 6532(b). As the Court explained in no uncertain terms in *O'Gilvie*, an action accrues and the statute of limitations begins to run "upon the receipt of payment." 519 U.S. at 91 (citation omitted).

- 24 -

The Government would have this Court read "receipt of payment" to mean something like "debit of funds from the Federal Reserve," rather than "receipt of the check." Opening Br. at 13-14. The Government's reading of that phrase from *O'Gilvie* makes no sense in the context of the Supreme Court's opinion. The Supreme Court began its discussion of Section 6532(b) by outlining precisely what it means: "[t]he [taxpayers] concede that they *received* the refund checks on July 9, 1990, and they agree that if the limitation period runs from the date of receipt—if, as the Government argues, that is the date of the "making of" the refund—the Government's suit was timely." 519 U.S. at 91. From the very beginning, the Court used "the date of receipt" as a shorthand for the date the taxpayers "*received* the refund checks." *Id.* The Court squarely considered the question whether, "as the Government argue[d]," the date the taxpayers received the refund checks "is the date of the 'making of' the refund." *Id.* And the Court later explained that its date-of-receipt rule would not prove "difficult to administer," because "[t]he date the check clears, after all, sets an *outer* bound." *Id.* at 92. That explanation necessarily means that *O'Gilvie*'s date-of-receipt rule is *not* the same as the date the check clears the Federal Reserve.

Next, look at what the Court cited as authority for the common-law date-of-receipt rule. *O'Gilvie*¸ 519 U.S. at 91 (citing, *inter alia*, *Sizemore v. E.T. Barwick Industries, Inc.*, 225 Tenn. 226, 233 (1971)). The cases cited by the Court do not

say that a common-law cause of action for money paid by mistake accrues upon a check's clearance. No, so long as the check eventually clears, the common-law rule is that action accrues when a check is received. *Sizemore*, 225 Tenn. at 233 (collecting authority). That is because, as the Court's authority explains, "[t]he generally accepted rule is that where a check delivered to a creditor is paid in due course, the debt is discharged pro tanto as of the time the check was received." *Id.* When the Court adopted the common-law rule, that is the rule it adopted.

Lest there be any confusion, the three dissenting justices read the Court's opinion precisely the same way. In dissent, Justice Scalia protested that the Court should only have "reject[ed] the proposition that the statutory period begins to run with the mailing of a refund check," because "[s]o long as [mailing] is not the trigger, there is no need to decide whether the proper trigger is receipt of the check or some later event, such as the check's clearance." *See id.* at 101 (Scalia, J., with whom O'Connor and Thomas, JJ., join, dissenting). The dissenting justices thus acknowledged that by "date of receipt" the majority meant "receipt of the check," and not "the check's clearance." *Id.* That is the reason why the dissent said anything at all about this issue—to explain the dissenters' disagreement with the majority's choice to announce such a specific holding.

Alternatively, the Government suggests that the Supreme Court's interpretation of Section 6532(b) in *O'Gilvie* is nonbinding dicta. Opening Brief at

17.  But the Court analyzed the relevant statutory provision, interpreted the text, and resolved the statute's meaning by adopting the analogous common-law rule that an action accrues on the date of receipt of the check.  The date-of-receipt rule was the "rationale upon which the Court based the result[]" of *O'Gilvie*. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66-67 (1996).  That makes the Supreme Court's decision a binding holding.  *Id.*; *see also Eisner*, 252 U.S. at 205 (holding that where the Court's reasoning "furnished the entire basis for the conclusion reached" it "cannot be regarded as obiter dictum").  "Nor is it relevant for present purposes th[is] holding[] might instead have been rested on other available grounds." *Burnham v. Superior Ct. of Cal., Cnty. of Marin*, 495 U.S. 604, 613 n.2 (1990) (plurality).  And for what it is worth, the Court knew that it was announcing a binding rule of law. 519 U.S. at 92 (contrasting the Court's "conclusion" in *O'Gilvie*, with "dicta in an earlier case from th[e] Court").

The Government looks to Justice Scalia to argue its point that *O'Gilvie*'s interpretation was dictum, but the Government's argument is premised on a misreading of Justice Scalia's dissent.  The Government reads the dissent as saying that "[t]he Court had no need to decide and thus did not decide" whether Section 6532(b) begins to run upon the receipt of the check.  Opening Brief at 17-18.  But those are the Government's words, not the words penned by Justice Scalia.  True, the dissent argued that "[s]o long as [mailing] is not the trigger, there is no need to

decide whether the proper trigger is receipt of the check or some later event, such as the check's clearance." *O'Gilvie*, 519 U.S. at 101 (Scalia, J., dissenting). Yet the dissent does not say that the Court *did not decide* that issue. Nor does the dissent imply such an argument—quite the opposite. The crux of the dissent's disagreement was with the majority's choices to reach the issue and to decide it. The Court and the dissenting justices agreed that the decision in *O'Gilvie* rested on one stated ground, namely that Section 6532(b)'s limitations period begins to run upon receipt of the refund check. That single ground is therefore the Supreme Court's holding. *See Eisner*, 252 U.S. at 205. Like *Carter* and *Fairbanks*, *O'Gilvie* binds this Court to the date-of-receipt rule.

Even if the Court's clear interpretation of Section 6532(b) in *O'Gilvie* can somehow be downgraded to dictum, it would make no difference here. The Government would have this Court "blandly shrug . . . off" the Supreme Court's decision. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1090 n.8 (9th Cir. 2003) (quoting *Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir. 1992)). But as this Court has instructed time and again, even the "mere dicta" of the Supreme Court are "not to be lightly disregarded." *Id.*; *see also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1058 n.1 (9th Cir. 2004). So, "[e]ven if" *O'Gilvie*'s interpretation of the statute "could be considered a dictum, . . . that would be of little significance because [Ninth Circuit] precedent requires that [this Court] give great

weight to dicta of the Supreme Court." *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 683 (9th Cir. 2004). This Court should thus accord great weight to *O'Gilvie*'s adoption of the common-law rule that the action accrues upon receipt of the check.

In any event, the Court in *O'Gilvie* certainly did not overrule either *Carter* or *Fairbanks*, and those decisions thus remain binding in the Ninth Circuit. As "published decision[s] of this court," the decisions in *Carter* and *Fairbanks* "constitute[] binding authority which 'must be followed unless and until overruled by a body competent to do so.'" *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) (quoting *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001)). No three-judge panel is competent to overrule the decisions of prior panels. "[T]hat power is reserved to the circuit court sitting en banc." *Robbins v. Carey*, 481 F.3d 1143, 1149 n.3 (9th Cir. 2007). And for a three-judge panel to deem the opinion of a prior panel overruled by a subsequent Supreme Court decision, such decision must be "clearly irreconcilable" with the prior panel opinion. *Miller v. Gammie*, 335 F.3d 889, 892-93 (9th Cir. 2003) (en banc). Whatever might be said of *O'Gilvie*, it cannot be clearly irreconcilable with *Carter* or *Fairbanks* because (at the Government's urging) the Supreme Court adopted the exact same rule employed by the Ninth Circuit in those cases. An opinion that endorsed the date-of-receipt rule is not clearly

irreconcilable with the date-of-receipt rule, and thus did not overrule prior Ninth Circuit cases applying it. The date-of-receipt rule continues to be the law of the Ninth Circuit.

### D. The erroneous decisions of the Seventh and First Circuits do not control here.

Because both Supreme Court and Ninth Circuit precedent are contrary to the Government's position, the Government resorts to out-of-circuit cases interpreting Section 6532(b). *See* Opening Brief at 14-15, 18 (citing *United States v. Greene-Thapedi*, 398 F.3d 635, 639 (7th Cir. 2005); *United States v. Commonwealth Energy Sys. & Subsidiary Cos.*, 235 F.3d 11, 14 (1st Cir. 2000)). This Court should disregard the decisions of those circuits for at least three reasons. First, *Carter* and *Fairbanks* continue to control regardless of any out-of-circuit decisions. Second, those courts erred in concluding that *O'Gilvie* was not binding. Third, the reasoning of those courts was unpersuasive.

*Carter* and *Fairbanks* continue to bind this panel, regardless of what any out-of-circuit decision may say. The only authorities competent to overrule Ninth Circuit precedent are the Ninth Circuit, sitting *en banc*, and the Supreme Court. *See Miller*, 335 F.3d at 892-93. Neither has overruled the date-of-receipt rule applicable here.

Instead, as explained above, the Supreme Court in *O'Gilvie* endorsed this Court's holding in *Carter* and made clear that the statute of limitations begins

- 30 -

running from the date the check was received.  *See* 519 U.S. at 91 (citing *Carter* approvingly in support of the date-of-receipt rule).  Yet the Seventh Circuit in *Greene-Thapedi* and the First Circuit in *Commonwealth Energy* both improperly construed the *O'Gilvie* Court's interpretation and analysis of Section 6532(b) as dicta.  As already explained above, *see supra* at 26-29, that was incorrect.

Finally, the reasoning underlying the decisions in *Greene-Thapedi* and *Commonwealth Energy* is unconvincing.  To begin, each indicates that a "clearance date" rule would provide greater certainty than a "date-of-receipt" rule.  *See Greene-Thapedi*, 398 F.3d at 639; *Commonwealth Energy*, 235 F.3d at 14.  This rationale for adopting the clearance date as the start of the statute of limitations is unpersuasive.  As the Supreme Court made clear in *O'Gilvie*, the Government is perfectly capable of administering and adhering to a date-of-receipt rule.  *See* 519 U.S. at 92 ("We concede . . . that a 'date of mailing' interpretation produced marginally greater certainty . . . [b]ut there is no indication that a date of receipt rule has proved difficult to administer in ordinary state or common law actions for money paid erroneously.").

*Greene-Thapedi* and *Commonwealth Energy* also draw the wrong conclusions from the wrong Supreme Court precedent.  Both courts pointed to language in *Wurts* in which the Supreme Court rejected the date-of-allowance rule because the Commissioner could "cancel the payment."  *Greene-Thapedi*, 398 F.3d at 638 (citing

*Wurts*, 303 U.S. at 418); *Commonwealth Energy*, 235 F.3d at 14 (same). Both courts read too much into this statement in *Wurts*. There, the Court explained that at the time the IRS merely allowed a refund, "the Government had no right to sue th[e] taxpayer to recover money before money had been paid to him." *Wurts*, 303 U.S. at 418. But the Government would indeed have a cause of action after the date of receipt—the Government could sue for the return of the check. The United States must plead only that a taxpayer received an erroneous refund check to state a Section 7405 claim. *See, e.g.*, *Chocallo v. I.R.S. Dep't of the Treasury* ("*Chocallo I*"), No. CIV.A. 04-3737, 2007 WL 2071880, at *7 (E.D. Pa. July 16, 2007), *aff'd sub nom. Chocallo v. United States*, 299 F. App'x 112 (3d Cir. 2008). The erroneous reasoning of two out-of-circuit decisions should not be used to upend decades of Ninth Circuit precedent.

## II. The Text, History, and Purpose of the Internal Revenue Code All Indicate a Refund Is Made When the Check Is Received

In addition to binding Ninth Circuit and Supreme Court precedent, fundamental tenets of statutory construction indicate that a refund is made under Section 7405 when a check is received. This reading is more consistent with the statutory text, with how these words are used and interpreted by the IRS itself elsewhere in the Internal Revenue Code (the "Code"), with background common-law rules, and with the legislative history of the provision.

## A.    The statute's plain meaning requires the date-of-receipt rule.

Section 6532(b) of the Code provides that "[r]ecovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund."  I.R.C. § 6532(b).  "Make" means "[t]o cause (something) to exist" or "[t]o legally perform, as by executing, signing, or delivering (a document)."  *Make*, *Black's Law Dictionary* (11th ed. 2019); *accord Make*, *Webster's New International Dictionary* (2d ed. 1934) (defining the verb as "to cause to exist, occur, or appear:  bring to pass").  "Refund" means "[t]he return of money to a person who overpaid, such as a taxpayer who overestimated tax liability or whose employer withheld too much tax from earnings."  *Refund*, *Black's Law Dictionary* (11th ed. 2019); *accord Refund*, *Webster's New International Dictionary* (2d ed. 1934) (defining the verb as "to return (money) in restitution, repayment . . ." and the noun as an "[a]ct of refunding, or that which is refunded").

These definitions require an active agent to make the refund.  Just as an agent must actively "cause" something, "perform" something, or "bring [something] to pass," so, too must an agent actively "make such refund."  Here, of course, that agent is the IRS:  The IRS causes the refund to occur, brings it to pass, and performs the act of refunding.  The "making of such refund" is thus complete when the IRS has acted by delivering a check.  But under the Government's interpretation, the IRS does not participate in the "making of such refund," but at best passively permits it

to occur at the hand of the taxpayer. The Government's proposed interpretation suggests that the IRS does not "make the refund" by delivering a check, but instead that the taxpayer "makes the refund" by depositing the check. The Government's proposed interpretation of Section 6532(b) contradicts the plain meaning of the text. The "making of such refund" occurs when the IRS "causes" the refund and "brings it to pass" by delivering a refund check; that occurs on the date of receipt, not on the date the check is deposited.

The Government attempts to avoid this conclusion by ignoring the meaning of "making of such refund," and focusing instead on definitions of the word "paid," the word used in some opinions to explain what it means to make a refund. Opening Brief at 7, 10 n.2. The Government thus manufactures a purported ambiguity in the statute's text by looking to dictionary definitions of words in judicial opinions interpreting the statute. The Government's approach runs contrary to this Court's tried and true method of "examining the *statute's* text." *Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201, 1212 (9th Cir. 2001) (emphasis added). This Court employs such method with good reason: to look each time to the dictionary definitions of each word in each prior judicial opinion would run the risk of allowing parties to smuggle in more favorable definitions that are not encompassed by the original wording of the statutory text. But "the language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v. Sonotone*

*Corp.*, 442 U.S. 330, 341 (1979).  Instead, this Court should parse the language of Section 6532(b) as the language of the statute.  To the extent the semantic meaning of the statutory text conflicts with the semantic meaning of the text of subsequent judicial opinions, the meaning of the statutory text must govern.

Regardless, even if this court were to look to the plain meaning of the word "paid," any person would understand that she has been "paid" once she has received a check.  If your employer gave you a paycheck on the first of the month, but you failed to deposit it, you could not complain that your employer *did not pay you*—because, of course, you were paid the moment you received the check.  And a landlord cannot hold a tenant's rent checks, fail to deposit them, and then evict the tenant for failure to pay rent, because the tenant in fact paid each time the tenant delivered a check and the landlord received it (as an Oregon court held when considering just those circumstances).  *See Lilly Ct. LLC v. Lee*, 198 Or. App. 321, 323 (2005).

The law accords with this common-sense intuition.  The Uniform Commercial Code ("U.C.C.") stipulates that a bank may charge against a customer's account any check that is "authorized by the customer and is in accordance with any agreement between the customer and bank."  U.C.C. § 4-401 (Am. L. Inst. & Unif. L. Comm'n 1977).  And under the U.C.C. and the law of many states, receipt of a check marks the time of payment, as long as the drawee bank subsequently honors the check.  *See,*

*e.g.*, 6A David Frisch, *Lawrence's Anderson on the Uniform Commercial Code* § 3-802:63 (3d. ed., 1981-2023) ("[T]he payment of the underlying debt does not become absolute until the check is honored or paid, at which time the underlying debt is deemed paid as of the date of the giving of the check."); § 3-802:64 ("A statute or contract term may require that payment be made before a specified deadline. A check that is given before the deadline satisfies the deadline requirement even though the actual honoring by the drawee bank occurs after the expiration of the deadline."); *Gudenau v. Bierria*, 868 P.2d 907, 911 (Alaska 1994) ("A check is proper payment for an obligation, and so long as the check is honored, the obligation is considered paid when the payee receives it.")

Contemporary evidence from the time Section 6532(b) was passed confirms this common-sense understanding. This Court has held that "unless defined, words in a statute 'will be interpreted as taking their ordinary, contemporary, common meaning.'" *United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) (quoting *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012)). Contemporary interpretations of "the making of such refund" reflect the understanding that it means the receipt of the refund check. Congress imposed the requirement that the Government must initiate its lawsuit within "two years after the making of such refund" in the Revenue Act of 1928. Less than a decade later, the Tenth Circuit offered its view of the ordinary and popular meaning of that phrase. *See Paulson*,

78 F.2d at 99. *Paulson* concluded that the refund was made when the IRS delivered a check and the taxpayer received it. "[T]he ordinary and popular concept" of "refund," it reasoned, is "to pay back, return, restore, make restitution." *Id.* And "[t]he return, restoration, and restitution of the money is made *when the check in payment of the obligation is delivered*." *Id.* (emphasis added).

The Tenth Circuit's decision offers an informed contemporary view of what the "making of a refund" meant in 1928—a view that fully supports the district court's decision. Yet the Government argues that *Paulson* in fact supports the Government's position, urging the Court to ignore the case's "bottom-line conclusion," and instead to focus on its general discussion of payments. Opening Brief at 16 n.4. The Government cannot gerrymander the holdings of past court decisions to fit the Government's purposes by focusing on scattered language while ignoring the courts' judgments and the rules they announce. Contrary to the Government's assertions, the *Paulson* decision provides excellent evidence of the contemporary understanding of when the "making of such refund" occurs: namely, when the "return, restoration, and restitution of the money" is made, which is "when the check in payment of the obligation is delivered." *Paulson*, 78 F.2d at 99.

Nor was *Paulson*'s interpretation of the statute unusual. Other contemporary decisions reached the same conclusion. *See United States v. Carpenter*, 84 F.2d 813, 814 (10th. Cir. 1936) (interpreting "the day [the refund] was made" to be the day

that "the check representing the refund . . . was delivered to appellee," i.e. the date of receipt); *United States v. McKinney*, 107 F.2d 879, 880-81 (6th Cir. 1939) (interpreting "the date of the payment of the refund" and "the date of the refund" both to mean "the date upon which the taxpayer received from the treasury the check," but tolling the accrual of interest on other grounds); *Fairbanks*, 95 F.2d at 795-96.

Congress ratified this settled interpretation of "the making of such refund" by reenacting the same language without amendment. Congress "does not draft statutes in a vacuum" and is "'presumed to know existing law pertinent to any new legislation it enacts.'" *United States v. Merrell*, 37 F.4th 571, 576 (9th Cir. 2022) (quoting *United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991)). Accordingly, this Court "presume[s] that Congress is aware of pre-existing judicial interpretations of statutory language it replicates in later statutes, and that it seeks to import those interpretations into the new statute." *Novak*, 476 F.3d at 1051 (en banc).

Within fifteen years of the section's enactment, the Sixth, Ninth, and Tenth Circuits interpreted the section to mean that a refund is made or paid when the taxpayer receives the check. *McKinney*, 107 F.2d at 880-81; *Fairbanks*, 95 F.2d at 795-96; *Paulson*, 78 F.2d at 99; *Carpenter*, 84 F.2d at 814. In the 95 years since Congress enacted the relevant text, Congress has re-enacted it and re-codified it, but never revised it—despite making other changes to the same section of the Code.

*Paulson* was decided in 1935, and Congress amended Section 610 the very next year without making any changes to the relevant language. Revenue Act of 1936, 74 Pub. L. No. 740, Title VI, § 803, 49 Stat. at 1744. Later, in 1954, Congress re-codified the provision under Section 6532(b) without changing the statutory language. Internal Revenue Code of 1954 Appendix Table 1, 68A Stat. 1, 949 (1954). Not to mention all of the times that Congress has amended the Code in the decades since. The Government is "wrong in insisting that the statutory text *requires* this court . . . [to] jettison[] 50 years," or decades more, "of settled case law that Congress has never seen fit to reject." *Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 682 (9th Cir. 2021) (en banc) (Collins, J., concurring) (emphasis in original), *cert. denied*, 142 S. Ct. 753 (Jan. 10, 2022).

### B. Other uses of these terms in the Code clearly refer to the date the taxpayer receives the check.

Various other references to "making a refund" in the Code further confirm this interpretation. When interpreting a statutory term, courts frequently look to how that word is used or interpreted elsewhere in the same statute. That is because "under the doctrine of *in pari materia*, words in different sections of the same statute should be construed similarly." *Anchondo*, 684 F.3d at 849.

Other instances of the phrase "making a refund" in the Code leave little doubt that they refer to the date when the taxpayer receives it and certainly before the check clears the Federal Reserve, especially in light of how the IRS itself has interpreted

the phrase. For example, the 2016 appropriations act amended the IRC to require that "[n]o credit or refund of an overpayment for a taxable year shall be made to a taxpayer before the 15th day of the second month following the close of such taxable year if a credit is allowed to such taxpayer under" the Earned Income Tax Credit ("EITC") or the Additional Child Tax Credit ("ACTC"). Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, Title II § 201, 129 Stat. 2242, 3076 (2015). Since Congress added this provision to the Code, the IRS has consistently interpreted "made" to mean "issued." Accordingly, it begins issuing refunds on February 15, and most EITC or ACTC claimants do not see their refunds in their bank accounts or in the mail until late February or early March.[3] If the time at which the refund was "made" in this provision referred to when funds were debited from

---

[3] *See, e.g.,* IRS, *When to Expect Your Refund if You Claimed the Earned Income Tax Credit or Additional Child Tax Credit*, https://www.irs.gov/credits-deductions/individuals/earned-income-tax-credit/when-to-expect-your-refund-if-you-claimed-the-earned-income-tax-credit-or-additional-child-tax-credit ("By law, we can't issue EITC or ACTC refunds before mid-February. This includes your entire refund, not just the part that's related to the credit you claimed on your tax return."); IRS, *EITC Awareness Day: Important changes mean more people qualify for credit that helps millions of Americans*, https://www.irs.gov/newsroom/eitc-awareness-day-important-changes-mean-more-people-qualify-for-credit-that-helps-millions-of-americans ("By law, the IRS cannot issue refunds before mid-February for tax returns that claim the EITC or the Additional Child Tax Credit (ACTC)."); IRS, *The IRS must hold refunds for tax returns claiming EITC or ACTC until at least February 15*, https://www.irs.gov/pub/irs-utl/oc-path-201.pdf ("[T]he IRS cannot issue refunds for some early filers until at least February 15. However, the IRS cautions that these refunds likely won't arrive in bank accounts or debit cards until the week of February 27 — if there are no processing issues with the tax return and the taxpayer chose direct deposit . . . .").

the Federal Reserve, then the IRS would be free to initiate this process much earlier than February 15. But the IRS understands, like anyone would, that a refund is made before the funds arrive in a taxpayer's bank account.

The Federal Circuit has also interpreted "refunds" to occur before the check clears the Federal Reserve. Under Section 6611, no taxpayer claiming a refund is entitled to interest "[i]f any overpayment of tax imposed by [the I.R.C.] is refunded within 45 days after the last day prescribed for filing the return" or after the actual filing date, whichever is later. I.R.C. § 6611(e). The Federal Circuit has interpreted the date the overpayment "is refunded" under Section 6611 to mean the date "when the refund is issued." *Deutsche Bank AG v. United States*, 742 F.3d 1378, 1381 (Fed. Cir. 2014). The Court of Federal Claims reached a similar interpretation with respect to a similar provision in the Code. *See Paresky v. United States*, 139 Fed. Cl. 196, 207 (2018) (citing a statute stating "[n]o refund or credit . . . shall be made" to say that "no refund could issue").

The Government's new interpretation of "making of such refund" is inconsistent with how these terms are used elsewhere in the Code. This Court should avoid the Government's incompatible interpretation by construing Section 6532(b) in harmony with the rest of the Code. *Anchondo*, 684 F.3d at 849.

**C.      The statute incorporates the common-law date-of-receipt rule.**

When Congress enacted the statute of limitations now codified at Section 6532(b), Congress legislated against background common-law principles and thus incorporated the common-law date-of-receipt rule that applies to actions for money had and received.   It is well established that Congress legislates statutes of limitations "against a background of common-law adjudicatory principles." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991); *Lagandaon v. Ashcroft*, 383 F.3d 983, 991 (9th Cir. 2004).   Although "Congress can override the common-law presumption" for when a time period begins to run, it can do so only "with express language." *Lagandaon*, 383 F.3d at 991.   When a statute has "no such language," courts must give effect to the background common-law rule. *Id.* at 992.

The background common-law rule here is the rule that would apply to a common-law action for money had and received.   The Supreme Court in *O'Gilvie* held that an action to recover an erroneous refund under Section 6532(b) is tantamount to a common-law action for "assumpsit" or "money had and received." 519 U.S. at 91.   That has also been the law of the Ninth Circuit for more than 60 years. *Rushlight Automatic Sprinkler*, 294 F.2d at 574 (collecting cases).

And as the Supreme Court held in *O'Gilvie*, the common-law rule is that an action for assumpsit or money had and received accrues on the date a check is received.   519 U.S. at 91 (citing, *inter alia*, *New Bedford v. Lloyd Inv. Assocs., Inc.*,

363 Mass. 112, 119 (1973); *Sizemore, Inc.*, 225 Tenn. at 233). It is black-letter law that, so long as a check is eventually honored, it is deemed paid "as of the time at which the check was received." 70 C.J.S. Payment § 17; *see also Sizemore*, 255 Tenn. at 232-33 (collecting cases).

Articulations of this common-law rule predate the enactment of the statute of limitations at issue here. In 1906, a California court explained the prevailing common-law rule that a defendant "bec[omes] immediately answerable to the plaintiff" in "an action for money had and received" upon the defendant's receipt of a "negotiable note"—in other words, a check. *Wagner v. Wedell*, 3 Cal. App. 274, 279 (Cal. Ct. App. 1906) (collecting cases). Indeed, the court clarified that the same is true even if "the defendant had received no money" at all, because "taking negotiable paper is equivalent to the receipt of money." *Wagner*, 3 Cal. App. at 280; *see also Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1382 (9th Cir. 1978) ("*Wagner* deals with the common law action for money had and received . . . the legal principle therein expressed is sound and alive."). And, as California courts have recognized, it is hornbook law that a check is deemed "paid" when it is received, not when it is eventually cashed. *Navrides v. Zurich Ins. Co.*, 5 Cal. 3d 698, 706 (1971) ("[O]nce the check is paid, the payment of the underlying debt which was theretofore conditional becomes absolute and relates back to the date of the delivery of the check."); *Hale v. Bohannon*, 38 Cal. 2d 458, 467 (1952) ("When

paid, it relates to the date of its delivery."); *Hooker v. Burr*, 137 Cal. 663, 668 (1902), *aff'd*, 194 U.S. 415 (1904) ("[W]here a check is received as conditional payment, the payment becomes absolute, and relates to the date of the delivery of the check when its recipient actually cashes it."); *California Stearns Co. v. Treadwell*, 82 Cal. App. 553, 563 (Cal. Ct. App. 1927) ("[W]hen a check is cashed by a recipient, the payment relates back to the time when the check was delivered.").

Other common-law courts in this Circuit have recognized the same rule. *See Gudenau*, 868 P.2d at 910 [Alaska Supreme Court] (holding that "so long as the check is honored, the obligation is considered paid when the payee receives it."); *R & S Invs. v. Howard*, 95 Nev. 279, 284 (1979) ("Once honored, the time of payment relates back to the time the check was delivered."); *Wagener v. U.S. Nat. Bank of La Grande*, 63 Or. 299, 302-03 (1912) ("It is sufficient if he show that by any process, which was treated by the parties as a money transaction, the defendant has received money or its equivalent which, in equity and good conscience, belongs to and should be paid to the plaintiff, and this is true although the plaintiff may never have had actual manual custody of the specie [coin money] in question . . . . A check was held to be money, being treated as such.") (quotation omitted); *Cornell v. Stimson Lumber Co.*, 257 Or. 215, 218 (1970) ("[O]n payment of the draft or check, the debt is deemed discharged as of the time the check was given."); *see also McCormack v. Caldwell*, 152 Idaho 15, 19 (Ct. App. 2011) (holding that a similar common-law

action for "each check accrued when it was stolen and forged," *i.e.*, in the wrongful possession of the defendant, not when it was deposited); *Bell v. Grimstad*, 82 Mont. 185, 185 (1928) (acknowledging that a defendant in an action for assumpsit may assert a defense of payment by showing that he paid in "what is ordinarily denominated money, such as a draft, note or check, etc."); *Barnes v. E. & W. Lumber Co.*, 205 Or. 553, 610 (1955) (analyzing a prior case to find that "liability in assumpsit was premised upon a wrongful exercise of dominion over the check," rather than the amount of money wrongfully received by the defendant).

In enacting Section 6532(b) and its predecessors, Congress did not "override the common-law presumption" that an action for money had and received accrues on receipt of a check because Congress did not include "express language" to the contrary. *Lagandaon*, 383 F.3d at 991; *see O'Gilvie*, 519 U.S. at 91 ("We are not aware of any good reason why Congress would have intended a different result where the nature of the claim is so similar to a traditional action for money paid by mistake—an action the roots of which can be found in the old common-law claim of 'assumpsit' or 'money had and received.'"). Just the reverse: as discussed above, the most natural reading of the statute is that "making of such refund" means "delivery of the refund check." Accordingly, the common-law date-of-receipt rule was incorporated in Section 6532(b), and it governs here. *O'Gilvie*, 519 U.S. at 91-92.

**D.** **The legislative history supports this interpretation.**

Even supposing that the term "making such a refund" were ambiguous, other sources of authority support using the date-of-receipt rule. "If the statute's terms are ambiguous, we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006). Congress codified this language at Section 6532(b) in August 1954, but it was based on the nearly identically worded Section 610 of the Revenue Act of 1928, which the Government concedes controls here. *See supra* at 20. Section 610 replaced a muddled statute of limitations provision in Section 1106 of the 1926 Act that had left uncertain the point at which a taxpayer's refund was secure from a government lawsuit. As the House Ways and Means Committee Report explained:

> Section 1106 (a) of the 1926 Act failed to resolve many doubtful questions as to the legal effect which follows the expiration of the period of limitations prescribed for the assessment or collection of a tax or for the making of a refund or credit or the bringing of a suit for refund. Section 1106 (a) of the 1926 Act is repealed as of its effective date and is replaced by sections 607, 608, 609, and 610 of this bill.

70 H. Rep. 2 at 33 (1927) *reprinted* in J. S. Seidman, *Seidman's Legislative History of Federal Income Tax Laws - 1938-1861* at 566 (1938).

When it was first introduced, Section 610 sought to cut off liability at a fixed, knowable date for any taxpayer who received an erroneous refund. To extend the limitations period due to a delay in depositing the check would thus run contrary to

- 46 -

the intent behind Section 610, which allowed the Government a relatively short period for correcting its error in issuing the refund. Congress intended the provision to provide clarity regarding limitations provisions in suits for refunds—and starting the limitations period on the date the refund check is received does just that. While the previous regime of unclear limitations left the taxpayer in doubt about when his liability would end, the new language—which has now remained unchanged for almost 100 years—made clear that any erroneous refund "may be recovered by suit brought in the name of the United States if such suit is begun within two years after the making of the refund." *Id.* at 34.

Beyond illuminating the legislative purpose, the legislative history indicates that Congress intended the receipt of the check to start the limitations period. Simply put, Congress used the language "making of the refund" in the same common-sense way that the Tenth Circuit did in *Paulson*. In discussions of a similar provision governing interest on a taxpayer's overpayment, the House and Senate Reports equate "making of the refund" and the "date of the refund" with "the date of the refund check."

> SEC. 613. INTEREST ON OVERPAYMENTS Under existing law in the case of a refund the interest period terminates with the allowance of the refund, a date which often precedes *the actual making of the refund* by a considerable period of time, thus depriving the taxpayer of interest during that period. Under section 613 of this bill, interest runs to a date not more than 30 days preceding the *date of the refund check*, such date to be determined by the commissioner. This provision is

- 47 -

administratively practicable and it will result in giving the taxpayer interest to within approximately 30 days of the *date of the refund*.

70 Senate Rep. 960 at 43 (1928) (emphases added). The interest provision discussed was eventually codified at Section 614 of the Revenue Act of 1928, right next to Section 610, the limitations provision discussed here.

Section 614 explicitly adopted a pro-taxpayer policy of paying interest on a refund up until the date of the refund check, rather than the date on which the Service first approved the refund. This was considered to be a fairer provision, providing taxpayers interest up until nearer the time that the check was issued and the refund was actually made. The Senate report on the provision demonstrates how the same Congress that codified this statute of limitations used the language at issue here. By equating the date of the refund with the date of the check, the report cements the contemporary understanding that the *Paulson* case laid out within years of the statute's enactment—a refund is made when it is returned to the taxpayer by delivery of a check.

### E. The Government's policy arguments to the contrary fail.

In a last-ditch attempt to convince the Court to ignore binding Ninth Circuit precedent and the statute's plain meaning, the Government argues that interpreting "making such refund" as the date of the receipt leads to an absurd result. Specifically, the Government contends that *Carter*'s interpretation of Section

- 48 -

6532(b) would allow the Government to sue the recipient of the check before he had ever gained any monetary benefit.

As explained above, *see supra* at 32, there is nothing absurd about this at all. The Government would sue under Section 7405 for the return of the check. The United States must plead only that a taxpayer received an erroneous refund check to state a Section 7405 claim. *Chocallo I*, 2007 WL 2071880, at *7. But as a practical matter, the Government has several more effective remedies if it catches an erroneous refund this early (such as stopping the mail, cancelling the check, or, in some circuits, collecting the funds through an administrative adjustment), so a suit for this relief is rarely if ever brought.[4]

The Government also contends that its preferred interpretation of the statute—that the statute of limitations begins to run on the day the check is deposited—would increase certainty as it would be apparent what day the check cleared the Treasury. But the Government's claim of certainty based on its proffered interpretation is a mirage. While it looks appealing at first glance, it adds another level of uncertainty by expanding and contracting the statute of limitations based on facts particular to each taxpayer. Perversely, the effective statute of limitations would be shorter for

---

[4] *See* I.R.S. C.C.A. 2005-03-031 (Jan. 21, 2005) (advising agency employees to attempt to cancel the issuance of the check, to stop the mail with the U.S. Postal Service, to issue a stop payment order, or to ask for a voluntary return of the check before initiating administrative action or litigation).

the taxpayer who rushes to the bank, but longer for the taxpayer who hesitates or who attempts first to alert the Government of an error. All the while, the Government's interpretation would create immense variability for determining when the statute of limitations starts to run in different cases based on the exigency of when a taxpayer actually deposits the check and how long it takes for the honored check to clear the Federal Reserve. *See Bruce*, 642 F. Supp. at 122 ("Where Congress has spoken and established a specific time for the government to detect its errors and to file suit, the government should not be allowed to benefit from an extension depending on the taxpayer's conduct."). But "[t]he right to initiate suit lies exclusively within the province of the Government—the party who made the error and who discovered its error," and it is up to the Government to bring suit timely to recover an erroneous refund. *Id.* The only certainty the Government seeks is a guarantee that the statute of limitations will *always* be extended in some form to the benefit of the Government.

### F.     The Government is judicially estopped from disputing that a refund in made when the check is delivered.

Finally, "it should go without saying that [the Government] is barred from altering its position" on when the statute of limitations begins to run, "thanks to the doctrine of judicial estoppel." *Pure Wafer Inc. v. Prescott, City of*, 845 F.3d 943, 953 (9th Cir. 2017). "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an

- 50 -

advantage by taking a clearly inconsistent position." *United States v. Kim*, 806 F.3d 1161, 1167 (9th Cir. 2015) (quoting *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir.2001)). This doctrine serves "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *Id.* (quoting *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir.1988)). This Court considers three factors in applying judicial estoppel: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party succeeded in its prior position"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)) (internal quotations omitted).

Unlike some other forms of estoppel, judicial estoppel applies to the Government in civil cases just as the doctrine would apply to any private party. *Compare Kim*, 806 F.3d at 1167 (applying the standard judicial estoppel factors to the Government), *with id.* at 1168 (imposing additional requirements to invoke equitable estoppel against the Government). The Government is not uniquely entitled to play "shell game[s]" with its positions in litigation. *United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1148 (9th Cir. 2011).

The Government has argued over and over again in prior litigation that a refund is made and paid upon the taxpayer's receipt of a refund check. *See, e.g.*, *Carter* Appellee Brief at 6, 10, 17, 18; *O'Gilvie* Petitioner Brief at at *38-40; Response to Defendants' Dispositive Motion for Summary Judgment, *Steinbrenner*, 2013 WL 12307914; Complaint, *Davenport*, 2009 WL 6354944; Brief for the Appellee, *Morgan*, 1995 WL 17116305. Under the Government's prior position, the Government loses this case. So, the Government now takes the clearly inconsistent position that a refund is not "made" or "paid until the refund check clears." Opening Brief at 28.

But the Government already "succeeded in its prior position." *Kim*, 806 F.3d at 1167. The Supreme Court and this Court adopted the date-of-receipt rule at the Government's urging. *See O'Gilvie*, 519 U.S. at 91; *Carter*, 906 F.2d at 1377. Other courts have even permitted the Government to recover more interest from taxpayers under the Government's date-of-receipt rule. *See, e.g.*, *Anderson*, 364 F. Supp. 2d at 571, 573; *Korda*, 2005 WL 2337621, at *1; *Campbell*, 2003 WL 23241957, at *1. The Government got what it requested, time after time.

Now, the Government is "playing fast and loose" with its prior position and with the holdings of the Ninth Circuit and the Supreme Court. *Kim*, 806 F.3d at 1167. In so doing, the Government seeks an "unfair advantage," not only in this suit, but in any suit under Section 7405. *Id.* Private citizens must be able to rely on

the rules announced by the Supreme Court and by this Court. The Government has asked courts to hold that a refund is made under the Code when a taxpayer receives a refund check. Courts have obliged. A taxpayer should be able to rest easy two years after he or she receives a check in the mail, without worrying that the Government made some mistake. And it would be particularly unfair to punish a taxpayer for waiting to deposit a potentially erroneous check, instead of running to the bank the second it arrives in the mail. Like any statute of limitations, Section 6532(b) "establishes a deadline after which the defendant may legitimately have peace of mind; it also recognizes that after a certain period of time it is unfair to require the defendant to attempt to piece together his defense to an old claim." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980). Thus, "judicial estoppel bars the government from effecting its sleight of hand." *Liquidators of Eur. Fed. Credit Bank*, 630 F.3d at 1148.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment below.

Dated:  March 6, 2023                                Respectfully submitted,

                                                     BY: /s/ *Jonathan Jacob Marsh*
                                                         Jonathan Jacob Marsh

Jacob T. Spencer                                     J. Jacob Marsh
GIBSON, DUNN & CRUTCHER LLP                          Ben Gibson
1050 Connecticut Avenue, NW                          Nicholas Venable
Washington, DC  20036-5306                           GIBSON, DUNN & CRUTCHER LLP
202.887.3792                                         1801 California Street
                                                     Suite 4200
                                                     Denver, Colorado  80202-2642
                                                     303.298.5700
                                                     JMarsh@gibsondunn.com

                                                     *Attorneys for Appellee Jeffrey Page*

**ADDENDUM**

I.R.C. § 65329(b) ………………………………………………………………57

I.R.C. § 7405(b), (d)……………………………………………………………..57

**Internal Revenue Code (26 U.S.C.):**

**I.R.C. § 6532. Periods of limitation on suits**

**(b) Suits by United States for recovery of erroneous refunds**. Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.

**I.R.C. § 7405. Action for recovery of erroneous refunds**

**(b) Refunds otherwise erroneous.** Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.

**(d) Periods of limitation.** For periods of limitations on actions under this section, see section 6532(b).

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-17083

I am the attorney or self-represented party.

**This brief contains** | 13,481 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [                    ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s Jonathan Jacob Marsh | **Date** | 03/06/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 21-17083

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Answering Brief for Defendant-Appellee

**Signature** | s/ Jonathan Jacob Marsh    **Date** | 03/06/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**          *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** | 21-17083

The undersigned attorney or self-represented party states the following:

◉ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/ Jonathan Jacob Marsh   **Date** | 03/06/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 17**                                                                 *New 12/01/2018*